UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.   CASE NO. 8:21-cr-370-CEH-JSS

   18 U.S.C. § 1344

BRIDGITTE KEIM

# INFORMATION

The United States Attorney charges:

## COUNT ONE
### (Bank Fraud)

**A.   Introduction**

At all times material to this Information:

1. Bridgitte Keim ("KEIM") was a resident of the Middle District of Florida.

2. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

3. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

4. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

5. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

6. PPP loan applications were processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the application, including information from the borrower, the total amount of the loan,

and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

7. PPP loan proceeds were required to be used for certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan was eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

8. Bank 1 was a financial institution federally insured by the Federal Deposit Insurance Corporation ("FDIC") headquartered and with branches in the Middle District of Florida and elsewhere. Bank 1 participated in the SBA's PPP as a lender and, as such, was authorized to lend funds to eligible borrowers under the terms of PPP.

9. Bank 1 required prospective PPP borrowers to open and maintain a bank account prior to PPP loan approval and funding.

### B. The Scheme and Artifice

10. Starting in or about April 2020, and continuing at least through July 2021, in the Middle District of Florida, and elsewhere, the defendant,

BRIDGITTE KEIM,

and others did knowingly and intentionally execute, and attempt to execute, a scheme and artifice to defraud Bank 1, a financial institution, and to obtain monies, funds, credits, assets, and other property owned by, and under the custody and

3

control of said financial institution, by means of materially false and fraudulent pretenses, representations and promises.

### C. Manner and Means of the Scheme

11. The manner and means by which the defendant and others sought to accomplish the scheme and artifice included, among others, the following:

    a. It was part of the scheme and artifice that KEIM would and did solicit family members and friends to participate in the SBA PPP loan program.

    b. It was further part of the scheme and artifice that KEIM would and did tell her family members and friends that she would prepare all necessary PPP loan paperwork knowing full well that the vast majority of the applicants did not have existing businesses.

    c. It was further part of the scheme and artifice that KEIM would and did create fictitious businesses for the individuals she recruited in order for the applicants to purportedly qualify for SBA guaranteed PPP loans at Bank 1.

    d. It was further part of the scheme and artifice that KEIM would and did create email addresses for the applicants she recruited for the purpose of submitting PPP documents to Bank 1 and communicating with Bank 1 loan officers to give the false appearance to the loan officers that they were communicating with the actual prospective borrower, not KEIM.

    e. It was further part of the scheme and artifice that KEIM would and did knowingly prepare and cause to be prepared fraudulent PPP loan applications in the names of the individuals she recruited to Bank 1.

4

      f.     It was further part of the scheme and artifice that KEIM would and did submit and cause to be submitted fraudulent PPP loan applications on behalf of relatives or friends containing material false, fraudulent, and misleading statements to Bank 1 and SBA.

      g.     It was further part of the scheme and artifice that KEIM would and did knowingly prepare, cause to be prepared, submit, and cause to be submitted fraudulent payroll documentation for the fictitious businesses she created to qualify the PPP loan applicants she recruited.

      h.     It was further part of the scheme and artifice that, after submitting the false and fraudulent PPP loan applications, KEIM would and did send text messages containing the names of the fictitious business names, false financial information, and the email addresses she created to the relatives she recruited so that these individuals could answer any questions from bank employees about the loan applications.

      i.     It was further part of the scheme and artifice that KEIM would and did falsely represent that all SBA PPP Loan proceeds would be used by the individuals she filed loan applications for only for business related purposes as specified in the loan application.

      j.     It was further part of the scheme and artifice that KEIMS's materially false, fraudulent, and misleading representations would and did cause Bank 1 to approve the PPP loan applications and Bank 1 to issue approximately

$817,560.56 in PPP funds, which Bank 1 then deposited into accounts of the individuals KEIM recruited.

 k. It was further part of the scheme and artifice that defendant KEIM would and did use and cause the PPP funds to be used for unauthorized purposes and for her own personal enrichment.

 l. It was further part of the scheme and artifice that KEIM would and did misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of acts performed in furtherance of the scheme.

### D. Execution of the Scheme

12. On or about March 4, 2021, in the Middle District of Florida and elsewhere, the defendant,

BRIDGITTE KEIM,

knowingly and intentionally executed and attempted to execute the aforesaid scheme and artifice to defraud, by preparing and submitting a fraudulent PPP loan application containing material false statements in the name of borrower G.H., in order to obtain loan proceeds from Bank 1, a bank insured by the FDIC, which loan was guaranteed by the SBA and which proceeds were deposited into an account at Bank 1 that the defendant accessed and withdrew funds from.

All in violation of 18 U.S.C. §§ 1344 and 2.

## **FORFEITURE**

1. The allegations contained in Count One is incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 982(a)(1) and (a)(2)(A).

2. Upon conviction of a violation of 18 U.S.C § 1344, the defendant,

BRIDGITTE KEIM,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such violation.

2. The property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of approximately $7,500, which represents the proceeds obtained from the offenses; and

3. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C § 853(p), as incorporated by 18 U.S.C § 982(b)(1).

KARIN HOPPMANN
Acting United States Attorney

By: _____
Christopher Poor
Special Assistant United States Attorney

By: _____
Jay G. Trezevant
Assistant United States Attorney
Chief, Economic Crimes Section